IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WENDY ANN BARRICELLA, )
        Plaintiff, )
)
v. ) 2:10-CV- 1419
)
COMMISSIONER OF )
SOCIAL SECURITY, )
        Defendant. )

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (Docket No. 12) be denied; that the defendant's motion for summary judgment (Docket No. 15) be granted, and that the decision of the Commissioner be affirmed.

II. Report

Presently before the Court for disposition are cross motions for summary judgment.

On October 27, 2010, Wendy Ann Barricella by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for Supplemental Security Income benefits prior to March 1, 2009, under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The instant application for Supplemental Security Income Benefits was filed on August 20, 2007 (R.144-150). On February 6, 2008, benefits were denied (R.104-108). On

March 18, 2008, the plaintiff requested a hearing (R.109) and pursuant to that request a hearing was held on November 4, 2008 (R.1-31). In a decision filed on January 30, 2009, an Administrative Law Judge denied benefits (R.38-64), and on April 3, 2009, the plaintiff requested reconsideration of that determination (R.37). On August 27, 2010, the Appeals Council affirmed the prior determination (R.32-35). The instant complaint was filed on October 27, 2010.

On February 24, 2009, the plaintiff filed another application for benefits and on September 10, 2009, benefits were awarded from March 1, 2009 (R.68-84).

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act prior to March 1, 2009. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008). The court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

In addition, a person will be considered disabled if he/she is

(a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:

impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on November 4, 2008, the plaintiff appeared with counsel (R.1-31) and testified that she was a high school graduate and attended business school for two years earning a degree in secretarial science and nurse's aide work.

She also testified that she last worked in 2006 as an assembler and was terminated due to lack of work (R.4) and that she also worked as a typist (R.22).

In addition, the plaintiff testified that she suffers from chronic obstructive pulmonary disease, arthritis in her back, hands and knees, and depression (R.5, 16, 17); that her most debilitating condition is her back (R.6); that she takes medication for pain, breathing and arthritis (R.9, 14, 17); that she can lift ten pounds, stand or walk for ten to fifteen minutes and sit for a half hour (R.9-10); that she tries to cook, clean and do laundry (R.19); that she spends her day reading and watching television (R.21) and that she last consumed alcohol in 2006 (R.25).

In addition, a vocational expert was called upon to testify (R.26-29). She classified the plaintiff's past two year employment as a typist as sedentary semi-skilled work (R.26). When asked to assume an individual who could perform sedentary work who was limited to simple routine repetitive tasks not performed under production pressure, the witness responded that the individual could perform typist work (R.26-27). However, if a sit/stand requirement was necessary, the witness testified that the individual could not perform work as a typist (R.27). When asked whether an individual of the plaintiff's age, education and work history who was restricted to sedentary work could engage in any other form of gainful employment, the witness responded affirmatively and enumerated a large number of jobs existing in the economy (R.28). The witness also testified that these jobs would still be available with a sit/stand option (R.28). If limited non-repetitive fine manipulation was required, the witness testified that the typist job

4

would be eliminated (R.28). In addition, the vocational expert testified that if an individual required being "off-task" more than fifteen percent of the time, he/she would not be employable (R.29).

In addition, certain other evidence was considered.

The plaintiff was treated by Dr. Joseph Nour between July 16, 2007 and October 3, 2007 for severe back and left leg pain. Nerve blocks were administered and medication prescribed (R.242-267).

The plaintiff was treated between February 6, 2006 and July 25, 2007 by Dr. Randon Simmons who noted a history of substance abuse and mood and personality disorders. He noted that the plaintiff was being treated for back pain and hoped to commence part-time cleaning work (R.203-209).

The plaintiff was hospitalized at the Butler Memorial Hospital from September 16, 2007 through September 22, 2007 for bilateral pneumonia, atypical back pain and depression. Medication was prescribed and she was discharged in good condition (R.210-226).

The plaintiff was routinely treated by Dr. Prem Kumar between January 25, 2007 and September 24, 2007. Sharp leg pain as well as knee and back pain and L3-4 disc bulging were noted (R.227-241).

In a report of an examination conducted on October 4, 2007, Dr. Matt El-Kadi noted left L4-5 foraminal narrowing with a mild disc bulge and left L3-4 foraminal narrowing. Surgery was not recommended but physical therapy and pain management were suggested (R.384-386).

In a report of a psychological examination conducted on October 27, 2007, Julie Uran, Ph.D. diagnosed recurrent major depression, anxiety disorder, alcohol abuse and polysubstance dependence in remission. The prognosis was said to be fair (R.268-276).

In a report of an examination conducted on October 30, 2007, Dr. Samuel I. Han diagnosed chronic low back pain and chronic obstructive pulmonary disease. He noted that the plaintiff could lift up to twenty pounds, stand or walk for up to an hour and sit for four hours (R.277-284).

In a report of a residual mental health evaluation completed on November 9, 2007, Arlene Tattan, Ph.D. noted the absence of any significant limitations although the plaintiff had a recurrent major depression, anxiety and personality disorders and a history of alcohol and polysubstance abuse in remission (R.285-301).

In a report of a residual functional capacity evaluation conducted on January 25, 2008, the evaluator noted degenerative disc disease of the lumbar spine, lumbar facet joint arthopathy and mild chronic obstructive pulmonary disease. It was observed that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds and stand, walk or sit for up to six hours (R.302-308).

A body scan performed on May 19, 2008 revealed mild to moderate diffuse osteoarthritis (R.339-340).

The plaintiff was treated by Dr. Joseph Nour between November 12, 2007 and August 5, 2008 for low back and leg pain. Surgery was not deemed appropriate and she was treated with medication and nerve blocks (R.341-371).

The plaintiff was treated at the Medical Center Clinic between September 15, 2008 and October 6, 2008. No need for hematologic intervention was deemed necessary. A small lytic lesion on the plaintiff's right humerus was observed (R.372-383).

The plaintiff was treated by Dr. Devashis A. Mitra between April 8, 2008 and October 21, 2008 for aches and pain. Osteoarthritis was diagnosed and medication recommended (R.387-404).

The plaintiff attended the Irene Stacy Community Mental Health Center between June 22, 2004 and October 22, 2008 where a diagnosis of substance induced mood disorder was made. The plaintiff was said to lack concentration and focus, and she was treated with medications (R.309-332).

The plaintiff received routine gynecological treatment at Magee-Womens Hospital between April 21, 2004 and October 23, 2008 (R.412-439).

The plaintiff was treated at the Butler Memorial Hospital between September 17, 2007 and November 6, 2008 for chronic obstructive pulmonary disease and chronic back pain. Medication was recommended (R.405-411).

The plaintiff was awarded SSI benefits commencing March 1, 2009 (R.68-84).

In a report of a March 23, 2009 psychiatric evaluation, marked limitations in the plaintiff's ability to function were noted (R.476-486).

In a report of a psychiatric evaluation performed on April 13, 2009, Dr. Robert L. Eisler noted a chronic and severe major depressive disorder and pain syndrome. The prognosis was "relatively poor" and it was stated that the plaintiff's ability to make occupational adjustments was precluded by her condition (R.487-491).

The plaintiff was treated at the Butler Memorial Hospital between January 14, 2009 and May 28, 2009 for chronic back and joint pain. Medication was prescribed and heat and exercise were also recommended (R.441-474).

Based on the evidence presented, the Commissioner determined:

> The claimant has not engaged in substantial gainful activity since August 1, 2007, the application date.
>
> The claimant has the following severe impairments: back disorder, osteoarthritis, chronic obstructive pulmonary disease, and depression...
>
> Although the medical evidence indicates that the claimant's impairment is severe within the meaning of the Regulations, the claimant has no impairment which meets or medically equals one of the impairments listed ...
>
> The claimant's mental impairment does not meet or medically equal the criteria of listing 12.04...
>
> Based on the evidence in record ... the claimant has mild restrictions in activities of daily living, and moderate difficulties in social functioning and with regard to concentration, persistence or pace, the claimant has moderate difficulties...
>
> Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied...
>
> After carful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work.
>
> * * *
>
> The claimant acknowledged that despite her back and arthritis complaints, she does some household chores, such as cleaning, cooking, and doing laundry... While she stated that she last abused alcohol in 2005 ... this is inconsistent with her prior report to Dr. Uram of last abusing alcohol in early 2007. Despite her

8

respiratory complaints, the claimant acknowledged that she continues to smoke, which the undersigned notes is contrary to medical advice...

Additionally, on the Function Report-Adult which she completed in October 2007, two months after filing her application, the claimant stated that her daily activities include getting her daughter ready for school, walking her daughter to school, "usually" going to appointments, cleaning, making dinner, and helping her daughter bathe. Other household chores include doing dishes, doing laundry, and taking the garbage out, as well as doing some shopping in stores. While she indicated that she has some pain with caring for her personal needs, the claimant did not report that she requires or receives any assistance with her personal care. Her complaints also appear inconsistent, as she complained of problems taking off her shirt, but stated that she had no problem caring for her hair. Despite her testimony of problems with concentration, the claimant reported that she also helps her daughter with homework and that she is able to pay bills, count change, and handle a saving account and checkbook. She said she can pay attention ½ hour "or more." she can also "usually" follow written instructions, follow spoken instructions "fairly well," and finishes what she starts. She also needs no reminders about caring for her personal needs or about taking her medications... She regularly goes to doctors' appointments, to her daughter's school, and to her next door neighbor's. She has no problem getting along with family, friends or neighbors. She also handles stress and changes in routine "fairly well."

\* \* \*

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect [are not supported by the functional capacity assessment].

\* \* \*

In sum, the ... residual functional capacity assessment is supported by the rather benign clinical and diagnostic findings regarding her musculoskeletal complaints, the generally very benign progress notes from her treating psychiatrist, her own reported range of

respiratory complaints, the claimant acknowledged that she continues to smoke, which the undersigned notes is contrary to medical advice...

Additionally, on the Function Report-Adult which she completed in October 2007, two months after filing her application, the claimant stated that her daily activities include getting her daughter ready for school, walking her daughter to school, "usually" going to appointments, cleaning, making dinner, and helping her daughter bathe. Other household chores include doing dishes, doing laundry, and taking the garbage out, as well as doing some shopping in stores. While she indicated that she has some pain with caring for her personal needs, the claimant did not report that she requires or receives any assistance with her personal care. Her complaints also appear inconsistent, as she complained of problems taking off her shirt, but stated that she had no problem caring for her hair. Despite her testimony of problems with concentration, the claimant reported that she also helps her daughter with homework and that she is able to pay bills, count change, and handle a saving account and checkbook. She said she can pay attention ½ hour "or more." she can also "usually" follow written instructions, follow spoken instructions "fairly well," and finishes what she starts. She also needs no reminders about caring for her personal needs or about taking her medications... She regularly goes to doctors' appointments, to her daughter's school, and to her next door neighbor's. She has no problem getting along with family, friends or neighbors. She also handles stress and changes in routine "fairly well."

\* \* \*

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect [are not supported by the functional capacity assessment].

\* \* \*

In sum, the ... residual functional capacity assessment is supported by the rather benign clinical and diagnostic findings regarding her musculoskeletal complaints, the generally very benign progress notes from her treating psychiatrist, her own reported range of

> activities, and the fact that none of her treating physicians opined
> that the claimant was disabled from all work.
>
> * * *
>
> Considering the claimant's age, education, work experience, and
> residual functional capacity, there are jobs that exist in significant
> numbers in the national economy that the claimant can perform...
> A finding of "not disabled" is therefore appropriate... (R.43-63).

The record demonstrates that prior to March 2009, while the plaintiff experienced some degree of physical impairments which were minor and did not prevent her from engaging in some form of substantial gainful activity which existed in the national economy. Rather, her lack of any significant past employment is suggestive of a lack of motivation to work. Additionally, she does suffer from depression, but it too is not severe. The record here suggests that with some limitations there was a wide range of employment in which the plaintiff was able to engage. For this reason, the conclusion of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. Azur v. Chase, 601 F.3d 212 (3d Cir. 2010). In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, it is recommended that the plaintiff's motion for summary judgment be denied; that the defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

Within fourteen (14) days after being served, any party may serve and file written objections to the Report and Recommendation. Failure to file timely objections will constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
Entered: May 23, 2011 United States Magistrate Judge